**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 17, 2003**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant/
    Cross-Appellee,

v                                        No. 121564

GREGORY PETTY,

    Defendant-Appellee/
    Cross-Appellant.

_____

BEFORE THE ENTIRE COURT

CAVANAGH, J.

A jury convicted defendant of first-degree felony murder, armed robbery, and possession of a firearm during the commission of a felony. Because defendant was a juvenile at the time of the offenses, the trial judge held a dispositional hearing, as required by MCL 712A.18(1)(n), which was combined with defendant's sentencing hearing. The judge sentenced

defendant as an adult to a mandatory term of life imprisonment for the felony-murder conviction. Defendant appealed, claiming that the trial judge failed to explicitly consider each factor articulated in MCL 712A.18(1)(n), as indicated in *People v Thenghkam,* 240 Mich App 29; 610 NW2d 571 (2000) (construing the "automatic waiver" statute, MCL 769.1[3], which mandates an inquiry nearly identical to MCL 712A.18[1][n]). Defendant also argues that he was denied the right to allocute before the imposition of his sentence. The Court of Appeals affirmed the convictions, but remanded for correction of the judgment of sentence and for resentencing. In response to the prosecutor's appeal, we reject the approach utilized by *Thenghkam,* vacate relevant portions of the Court of Appeals decision, and remand to the trial court for resentencing in accord with this opinion.

## I. Facts and Proceedings

At the age of fifteen, defendant Gregory Petty encouraged his twelve-year-old companion to commit armed robbery. In the course of the robbery, the twelve-year-old child shot and killed the victim, Calvin Whitlow. In a statement to the police, the younger companion indicated that defendant gave him the gun. When asked why he shot the victim, the twelve-

year-old stated, "Greg threatened to kill me if I didn't."[1]

As permitted by MCL 712A.2d, defendant's case was designated for trial in the family division as an adult criminal proceeding. The jury found defendant guilty of felony murder, armed robbery, and felony-firearm.

Following a combined dispositional and sentencing hearing,[2] the court imposed an adult sentence, one of three options available to the court under MCL 712A.18(1)(n). Defendant received a mandatory sentence of life imprisonment for the felony-murder conviction, MCL 750.316(1)(b), and a consecutive two-year term for the felony-firearm conviction, MCL 750.227b.

Before imposing the sentence, the trial judge articulated his rationale in the following statement:

> The thought of sentencing anyone to life in prison without chance of parole takes your breath away. But after you catch your breath it's very clear that we have guidelines. They're called laws. And we're required to follow the law. To that extent, this Court's responsibility, this Court's duty is to interpret not only the conviction of first degree murder; not only the conviction for armed robbery; not only the conviction for felony firearm, but to look at how a sentence as an adult versus disposition as a juvenile will impact the community.

_____

[1]Defendant's twelve-year-old companion, the actual shooter, accepted an offer to plead guilty of second-degree murder and received a delayed sentence.

[2]The court exercised its discretion and combined the dispositional and sentencing hearings into one proceeding.

3

The Court has had a chance to hear quite eloquently from the family of the victim. They have been consistant [sic] in their appearances before the Court throughout this lengthy process. I don't believe there's any question, in fact it's not controverted, the jury found [defendant] guilty of first degree murder. There is no more serious crime. The jury also found that even though he was not the actual person who fired the weapon that resulted in the death of Mr. Whitlow, . . . he was responsible for that.

The record of [defendant], the juvenile record, certainly reflects a number of contacts. I was a little surprised at some of the testimony offered this morning.

I talked about the law a few moments ago. The law dictates whether people are innocent or guilty upon the presentation of evidence and a ruling either by a Court or by a judge or by a jury. To read a report that says there was a dismissal or there was–there's insufficient evidence does not begin to tell the whole story. What I have though based on that information that's in the file, based on these reports is there has been consistant [sic] contact with this Court that has resulted in not one, but now two convictions. One for carrying a concealed weapon and now this one, which includes–actually three convictions for various felonies including murder one.

[Counsel for defendant] argued that there is sufficient juvenile programming available to assist [defendant]. I don't really think that's controverted. The question is did the witnesses come forward with ambiguous recommendations about–Judge, I think that he ought to be in a juvenile system, but I think he probably needs to be their [sic] longer than the law allows. That is the crux isn't it? It's what [the] law will allow. And if you're saying that he needs to be in there longer than what [the] law will allow for a juvenile then you are saying to this Court that the only option we have available is the adult sentence. He's not been successful in the programming requirements relative to this matter.

4

At the hearing involving Mr. Moore, the Court talked about penalizing the mother if the law would allow. Now perhaps that was a little unfair. The mother, the father, family, school, court, you name it, I think that there's plenty of blame to go around. But the reality is that when you get finished assessing blame it still gets us back to what [the] law demands. If the juvenile disposition will not be sufficient then from where I sit there is no alternative. As such I will sentence [defendant] as an adult. The law requires a mandatory life sentence without parole. That's all.

On appeal, defendant alleged several errors, including a violation of MCL 712A.18(1)(n), which mandates consideration of the enumerated criteria, and a violation of his right to allocute before sentencing. The Court of Appeals affirmed, but remanded for resentencing in light of the court's failure to specifically articulate factual findings regarding each criterion listed in §§ 18(1)(n)(i)-(vi) and its failure to provide defendant with an opportunity to allocute.[3] We granted the prosecutor's application for leave to appeal. 467 Mich 896 (2002).

## II. Standard of Review

Because we must clarify the proper interpretation of MCL 712A.18(1)(n), this issue of law is subject to review de novo. *In re MCI*, 460 Mich 396, 413; 596 NW2d 164 (1999).

Further, we review de novo the scope and applicability of

---

[3] Unpublished opinion per curiam, issued April 26, 2002 (Docket No. 219348).

5

the common-law right to allocute, also a question of law. *People v Petit*, 466 Mich 624, 627; 648 NW2d 193 (2002).

### III. The Dispositional and Sentencing Inquiry

Following a judgment of conviction in a designated case, MCL 712A.18(1)(n) provides a judge with the option of imposing either a juvenile disposition, an adult sentence, or a blended sentence, i.e., a delayed sentence pending defendant's performance under the terms provided by a juvenile disposition. To understand the appropriate method of inquiry a judge is required to undertake, we must examine the statute, MCL 712A.18(1)(n), to determine the Legislature's intent.

The first step in discerning legislative intent requires review of the statutory text adopted by the Legislature. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). If unambiguous, the Legislature will be presumed to have intended the meaning expressed. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). Should reasonable minds differ with respect to a statute's meaning, judicial construction is appropriate. *Sam v Balardo*, 411 Mich 405, 418-419 n 9; 308 NW2d 142 (1981).

MCL 712A.18 provides in part:

> (1) [I]f the court finds that a juvenile is within this chapter [i.e., subject to the juvenile code], the court may enter any of the following orders of disposition that are appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained:

6

* * *

(n) If the court entered a judgment of conviction under section 2d[4] of this chapter, enter any disposition under this section or, if the court determines that the best interests of the public would be served, impose any sentence upon the juvenile that could be imposed upon an adult convicted of the offense for which the juvenile was convicted. If the juvenile is convicted of a violation or conspiracy to commit a violation of . . . MCL 333.7403,[5] the court may impose the alternative sentence permitted under that section if the court determines that the best interests of the public would be served. The court may delay imposing a sentence of imprisonment under this subdivision for a period not longer than the period during which the court has jurisdiction over the juvenile under this chapter by entering an order of disposition delaying imposition of sentence and placing the juvenile on probation upon the terms and conditions it considers appropriate, including any disposition under this section. If the court delays imposing sentence under this section, section 18i of this chapter applies. If the court imposes sentence, it shall enter a judgment of sentence. If the court imposes a sentence of imprisonment, the juvenile shall receive credit against the sentence for time served before sentencing. . . .

The discretionary authority to choose among three alternatives is plainly stated in this portion of the statute; the court may "enter any [juvenile] disposition," "impose any sentence . . . that could be imposed upon an adult," or "delay imposing a sentence of imprisonment . . . by entering an order

[4] MCL 712A.2d prescribes the conditions under which a juvenile may be tried as an adult.

[5] MCL 333.7403 proscribes the possession of controlled substances.

7

of disposition delaying imposition of sentence and placing the juvenile on probation upon the terms and conditions it considers appropriate . . . . " *Id*.

To facilitate the appropriate inquiry when choosing among the three sentencing options, the Legislature has prescribed the relevant considerations in the remaining portion of the statute:

> In determining whether to enter an order of disposition or impose a sentence under this subdivision, the court shall consider all of the following factors, giving greater weight to the seriousness of the offense and the juvenile's prior record:
>
> (i) The seriousness of the offense in terms of community protection, including, but not limited to, the existence of any aggravating factors recognized by the sentencing guidelines, the use of a firearm or other dangerous weapon, and the impact on any victim.
>
> (ii) The juvenile's culpability in committing the offense, including, but not limited to, the level of the juvenile's participation in planning and carrying out the offense and the existence of any aggravating or mitigating factors recognized by the sentencing guidelines.
>
> (iii) The juvenile's prior record of delinquency including, but not limited to, any record of detention, any police record, any school record, or any other evidence indicating prior delinquent behavior.
>
> (iv) The juvenile's programming history, including, but not limited to, the juvenile's past willingness to participate meaningfully in available programming.
>
> (v) The adequacy of the punishment or programming available in the juvenile justice

8

system.

> (vi)  The dispositional options available for the juvenile.  [MCL 712A.18(1)(n).]

The Court of Appeals has addressed the degree of analysis required by the nearly identical inquiry prescribed by MCL 769.1(3) and concluded that specific findings must be articulated with regard to each criterion enumerated in the statute.  *Thenghkam* at 41.  Reviewing for clear error, the Court of Appeals evaluated the trial court's ability to "*sort the logical, reasonable, and believable evidence*" from the irrelevant information.  *Id.* at 67.  Next, according to the Court of Appeals, the trial judge must "consider and balance all the factors to decide whether to sentence a defendant as a juvenile or adult."  *Id*.  This consideration is subject to review for an abuse of discretion.  *Id.* at 42.  To justify this detailed approach, the Court explained:

> [A]s with all judicial decisions that do not rest solely on the law, a trial court deciding whether to sentence a defendant as an adult or a juvenile must point to the requisite facts to justify its decision. Consequently, and aside from the question of clear error, if the trial court fails to make findings of fact, it cannot fully exercise its discretion by giving proper weight to the various factors it must consider to make its decision under the sentencing statute. [*Id.* at 48 (citations omitted).]

While we agree with the *Thenghkam* Court that decisions concerning a juvenile's future require the most thoughtful and reasoned solicitude—whether the family division must

9

automatically waive the juvenile into the circuit court's jurisdiction, MCL 769.1(3), or try the juvenile as an adult in a "designated proceeding," MCL 712A.18(1)(n)—we find the focus of the Court of Appeals analysis misplaced. Instead of concentrating primarily on the sufficiency of the trial court's factual determinations vis-à-vis the criteria listed in MCL 712A.18(1)(n)(i)-(vi), a plain reading of the statute requires that a court deliberately consider whether to enter an order of disposition, impose a delayed sentence, or impose an adult sentence in light of the six factors enumerated in subsection 1(n)(i)-(vi). As evidence that it complied with the statute, the trial court, on the record, must acknowledge its discretion to choose among the three alternatives. Hence, a court should consider the enunciated factors, MCL 712A.18(1)(n)(i) through (vi), to *assist* it in choosing one option over the others. A trial court need not engage in a lengthy "laundry list" recitation of the factors. Rather, the focus of the hearing should be on the three options, i.e., an adult sentence, a blended sentence, or a juvenile disposition, as outlined in the recently adopted court rules.[6] For this reason, we repudiate the Court's reasoning in *Thenghkam* to the extent it conflicts with this explicit three-part inquiry.

---

[6]See MCR 3.955 specifically addressing these three options.

As a result, trial courts will no longer be forced to undertake a mechanical recitation of the statutory criteria. Rather, a court must logically articulate on the record why it has chosen one alternative over the other two, in light of the criteria articulated in MCL 712A.18(1)(n). By so doing, a court performs the analysis required by the Legislature, while establishing an adequate record to permit appellate review.

In this case, the trial court offered a considered rationale for its decision to sentence the defendant as an adult. The court reasoned, in part:

> [Counsel for defendant] argued that there is sufficient juvenile programming available to assist [defendant]. I don't really think that's controverted. The question is did the witnesses come forward with ambiguous recommendations about–Judge, I think that he ought to be in a juvenile system, but I think he probably needs to be their [sic] longer than the law allows. That is the crux isn't it? It's what the law will allow. And *if you're saying that he needs to be in there longer than what the law will allow for a juvenile then you are saying to this Court that the only option we have available is the adult sentence.* . . .
>
> *If the juvenile disposition will not be sufficient then from where I sit there is no alternative. As such I will sentence [defendant] as an adult.* The law requires a mandatory life sentence without parole. That's all. [Emphasis added.]

From this record, it is clear that the trial court was aware of its options to impose a juvenile disposition or an adult sentence. What is not clear is whether the trial court

11

considered and rejected its option to impose a delayed sentence once it determined that the juvenile system was inadequate. Therefore, because we cannot be certain that the trial court was aware of its discretion to impose a delayed sentence, we remand this case for a rearticulation of its analysis. On the basis of the evidence presented at the hearing, the court shall acknowledge its discretion to choose among the three options, articulating on the record its rationale for selecting among the alternatives provided by our Legislature, and in consideration of the factors prescribed by MCL 712A.18(1)(n).

## IV. Juvenile-Allocution Requirements

Defendant also claims he was denied the opportunity to allocute.[7] As noted above, a juvenile defendant subject to MCL 712A.18(1)(n), having been tried as an adult, may receive a juvenile disposition, an adult sentence, or a blended sentence. A sentencing court's duty to provide a defendant with the opportunity to allocute has been long established:

---

[7]According to Blacks Law Dictionary, 7th ed, "allocute" means "[t]o deliver in court a formal, exhortatory address; to make an allocution." "Allocution" generally refers to "[a]n unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence." *Id.*

(2) . . . . At sentencing the court, complying on the record, must:

* * *

(c) give the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence[.]  [MCR 6.425(D).]

This directive permits a defendant to speak in mitigation of the sentence.  When interpreting an analogous federal rule, the United States Supreme Court underscored the value of this opportunity:

[The] legal provenance [of the federal rule providing defendants with an opportunity to speak to the court on their own behalf] was the common-law right of allocution.  As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal. . . . Taken in the context of its history, there can be little doubt that the drafters of [the federal rule] intended that the defendant be personally afforded the opportunity to speak before imposition of sentence. . . .  The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.  [*Green v United States,* 365 US 301; 81 S Ct 653; 5 L Ed 2d 670 (1961).]

In this case, the court—speaking exclusively to defense counsel—asked if counsel had concluded defendant's dispositional presentation.  This query immediately preceded the court's articulation of its sentencing rationale.  At no point did the court provide defendant with an opportunity to

13

allocute.[8]

The prosecutor has claimed that defendant could not possibly have been adversely affected by this omission because the judge had no discretion with regard to sentencing; the felony-murder statute, MCL 750.316, requires mandatory life imprisonment upon conviction. However, this conclusion ignores the historical foundation of the right to allocute. Under English common law, all felony convictions resulted in mandatory death sentences. See 4 Blackstone, Commentaries, 375-376. By providing an opportunity to address the court, a defendant could pray for an excused or delayed sentence. *Id.* Hence, the mandatory nature of a sentence does not ipso facto render the common-law right to allocute inapposite.

In fact, the right to allocution does much more than permit an accused to plead for mercy. "It . . . ensure[s] that sentencing reflects individualized circumstances. Furthermore, allocution 'has value in terms of maximizing the perceived equity of the process.'" *United States v De Alba*

---

[8] This Court recently clarified the scope of a defendant's right to allocute in *Petit* at 636: "[T]he trial court must allow the defendant a chance to speak on his own behalf before being sentenced. This does not mean that the trial court must specifically ask the defendant whether he wishes to allocute, although this would be the most certain way to ensure that all defendants who do want to allocute on their own behalf are, in fact, given the opportunity to do so."

14

*Pagan,* 33 F3d 125, 129 (CA 1, 1994) (citations omitted). Even when a defendant fails to convince a judge that sentence modification is warranted, the opportunity itself serves to provide a defendant with an occasion to accept responsibility, offering defendants and victims a potentially dignified and healing exchange. Moreover, a juvenile defendant tried in a criminal proceeding should be afforded—at a minimum—the same protections available to adults. To deny a juvenile a meaningful opportunity to allocute at the only discretionary stage of a combined dispositional and sentencing proceeding would seriously affect the fairness and integrity of the judicial proceeding, particularly when the juvenile is subject to an adult criminal proceeding. Just as we reject the *Thenghkam* Court's command to create a mechanical list of factual findings for each criterion prescribed by the Legislature, we must also reject any attempt to transform a juvenile defendant's common-law right to allocute into a perfunctory, hollow exercise.

Because our current court rules do not expressly provide juvenile defendants with an opportunity to allocute at dispositional hearings, and because this phase of the proceeding may be the only opportunity for a court to exercise

15

its discretion, we amend MCR 3.955[9] due to the need for

_____

[9]MCR 3.955 (formerly MCR 5.955) shall now read:

(A) Determining Whether to Sentence or Impose Disposition. If a juvenile is convicted under MCL 712A.2d, sentencing or disposition shall be made as provided in MCL 712A.18(1)(n) and the Crime Victim's Rights Act, MCL 780.751 *et seq.*, if applicable. In deciding whether to enter an order of disposition, or impose or delay imposition of sentence, the court shall consider all the following factors, giving greater weight to the seriousness of the offense and the juvenile's prior record:

(1) the seriousness of the alleged offense in terms of community protection, including, but not limited to, the existence of any aggravating factors recognized by the sentencing guidelines, the use of a firearm or other dangerous weapon, and the effect on any victim;

(2) the culpability of the juvenile in committing the alleged offense, including, but not limited to, the level of the juvenile's participation in planning and carrying out the offense and the existence of any aggravating or mitigating factors recognized by the sentencing guidelines;

(3) the juvenile's prior record of delinquency including, but not limited to, any record of detention, any police record, any school record, or any other evidence indicating prior delinquent behavior;

(4) the juvenile's programming history, including, but not limited to, the juvenile's past willingness to participate meaningfully in available programming;

(5) the adequacy of the punishment or programming available in the juvenile justice

16

immediate action to require allocution before a court determines whether a child will serve a juvenile disposition, a blended sentence, or an adult sentence.[10]

Therefore, on remand, the trial court shall provide defendant with an opportunity to allocute before choosing among the three alternatives prescribed in MCL 217A.18(1)(n).

V

Defendant was sentenced as an adult to mandatory life for first-degree murder.  MCL 712A.18(1)(n).  For the reasons stated above, we repudiate the Court of Appeals analysis in *Thenghkam,* vacate apposite portions of the Court of Appeals

---

system; and

    (6) the dispositional options available for the juvenile.

    The court also shall give the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in deciding whether to enter an order of disposition or to impose or delay imposition of sentence.

    (B)-(E)   [Unchanged.]

[10]MCR 1.201(D) provides:

    The Court may modify or dispense with the notice requirements of this rule if it determines that there is a need for immediate action or if the proposed amendment would not significantly affect the delivery of justice.

17

opinion below, and remand this case to the trial court for a rearticulation of its analysis after the court has given defendant an opportunity to allocute.

Michael F. Cavanagh
Maura D. Corrigan
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman
