*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KATHLEEN RUTH JILES,

        Defendant-Appellant.

UNPUBLISHED
May 26, 2022

No. 357455
Jackson Circuit Court
LC No. 19-004490-FH

Before: MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals by leave granted her sentences for her plea-based convictions of embezzlement over $100,000, MCL 750.174(7), using a computer to commit a crime, MCL 752.796, uttering and publishing, MCL 750.249, and forgery, MCL 750.248. The trial court sentenced defendant to serve concurrent prison terms of 7 to 20 years each for the embezzlement and use-of-a-computer convictions, and 3 to 14 years each for the uttering-and-publishing and forgery convictions. We affirm.

## I. FACTS

Defendant was employed as a bookkeeper, and used her position to access her employer's checks, bank account, pension accounts, credit cards, payroll, health insurance, and dental insurance accounts to embezzle funds from the company. Defendant's employer became suspicious of her transactions, so defendant was terminated. The replacement bookkeeper examined the company's records of financial transactions, and documented defendant's fraudulent transactions that took place over several years. It was stipulated that defendant owed $565,145 in restitution, but testimony from a probable-cause hearing indicated that defendant likely purloined a greater amount over her approximately nine years with the subject employer. After defendant was incarcerated, a mental-health evaluation resulted in a diagnosis of bipolar disorder.

On appeal, defendant argues that the trial court errantly denied her motion for resentencing, because it did not consider her mental illness while determining her sentences, and because her

-1-

seven-year minimum sentences, which departed slightly from the recommended range under the sentencing guidelines, were not reasonable. We disagree.

## II. MOTION FOR RESENTENCING

This Court reviews the trial court's decision on a motion for resentencing for an abuse of discretion. *People v Puckett*, 178 Mich App 224, 227; 443 NW2d 470 (1989). Likewise, so is a trial court's response to a claim of inaccuracy in a presentence investigative report (PSIR). *People v Lucey*, 287 Mich App 267, 275; 787 NW2d 133 (2010). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Martinez*, 307 Mich App 641, 646; 861 NW2d 905 (2014).

Defendant first argues that the trial court relied on inaccurate information while fashioning the sentence. "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The "Department of Corrections makes critical decisions concerning a defendant's status on the basis of information contained in the PSIR," and thus "the PSIR should accurately reflect any determination the sentencing judge has made regarding the accuracy or relevance of its information." *People v Waclawski*, 286 Mich App 634, 689-690; 780 NW2d 321 (2009).

In this case, defendant asserts that information in the PSIR regarding her mental health was inaccurate. Defendant's PSIR stated that she "claims to be in good mental and physical health," and later stated that "defendant denies any mental health concerns or diagnosis." Defendant does not assert that she was inaccurately quoted, and there was no other information before the court regarding her mental health at the time of sentencing. Accordingly, the information available to the court at the time relevant, which consisted entirely of reports of what defendant herself had to say about her mental health, cannot not be considered inaccurate.

However, while incarcerated, a nurse practitioner with the Department of Corrections performed a mental-health assessment of defendant, and concluded that she has bipolar disorder. We take judicial notice that, according to the industry standard for information about mental illnesses and associated symptoms, bipolar disorder involves "[a] distinct period of abnormally and persistently elevated, expansive, or irritable mood and abnormally and persistently increased activity or energy" during which there is an observable change in functioning with other symptoms, such as "[i]nflated self-esteem or grandiosity," "[d]ecreased need for sleep," "[m]ore talkative than usual or pressure to keep talking," "[f]light of ideas or subjective experience that thoughts are racing," "[i]ncrease in goal directed activity," and "[d]istractibility." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed, 2013) (DSM-5), p 124. Particularly relevant to defendant's argument is that a symptom of a manic or hypomanic episode includes an "[e]xcessive involvement in activities that have a high potential for painful consequences (e.g., engaging in unrestrained buying sprees, sexual indiscretions, or foolish business investments)." *Id*. Defendant suggests that such impulsivity could have influenced her embezzling behaviors. Defendant emphasizes that the trial court did not consider this information in determining her sentence because it was not contained in the PSIR, and that she moved for resentencing on that basis. See *People v Bennett*, 335 Mich App 409, 429; 966

NW2d 768 (2021) ("Our justice system generally regards an offender who commits a crime while suffering from undiagnosed or untreated mental illness as less deserving of the harshest punishments.").

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). "[A] sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). "[T]he use of inaccurate information at sentencing may violate defendant's right to due process." *People v Sharp*, 192 Mich App 501, 509-510; 481 NW2d 773 (1992).

Defendant argues that inaccurate information to the effect that defendant did not have a mental illness affected her sentencing because the trial court had asked her whether mental illness contributed to her criminal behavior. We note, however, that the trial court did not specifically ask defendant whether mental illness influenced her embezzling; it more broadly asked defendant to address where the embezzled money went and whether personal financial hardship motivated her actions. In particular, during the plea hearing, the court stated that it would likely sentence defendant at the top of, or beyond, the guidelines recommendation because of the amount of money embezzled, and encouraged defendant to provide "a meaningful accounting of where this money went," specifying the amount as $700,000 to $1.2 million. At sentencing, defense counsel informed the trial court that the funds were deposited into defendant's account and she spent them, but that in doing so she did not purchase a large asset that could be seized.

The trial court asked defendant if she wished to respond to the observation that embezzlement cases are often the result of an embezzler's attempt to manage acute financial difficulties, while harboring notions of repaying the victim. Defendant responded that she came to the situation as one who had not often embezzled and that she was shocked to have gone so far out of control. While pronouncing defendant's sentence, the trial court stated it considered how defendant betrayed the trust placed in her as the bookkeeper, the large amount of money that she took thereby causing significant damage to her employer and its other employees, and that defendant only stopped after nine years when she was caught. Important to this discussion, the trial court noted that greed appeared to motivate defendant, because the purchases tended to be luxury items rather than necessities, and because defendant did not give expression to any feelings of remorse by selling any of the items and reimbursing the victims.

The trial court thus did not indicate that it relied on any particular understanding regarding defendant's mental health when fashioning the sentence. Neither party referred to defendant's mental health at the plea proceeding or sentencing, and there was no evidence on the entire record that any of the incidents of embezzlement over nine years of employment, totaling over $500,000, were compelled specifically by a hypomanic or manic episode.

Again, the trial court determined from the information before it that defendant's motive was greed, and whether defendant had a mental illness was neither an issue at the plea proceeding, nor mentioned at sentencing. Further, although defendant's psychiatric examination resulted in a diagnosis of bipolar illness, it did not arrive at the conclusion that that condition was involved in defendant's criminal behaviors. Indeed, the trial court indicated that it did not feel that it was misled by a lack of information about defendant's bipolar disorder at sentencing by denying defendant's motion for resentencing after it was informed of that diagnosis. The trial court did,

however, reason that defendant's criminal conduct did not consist of impulsive acts, but rather was characterized by planning many years of transactions in order to illegally acquire a large amount of money while evading detection. We further note that the court did order that defendant's PSIR be amended to acknowledge defendant's newly diagnosed mental condition.

This Court has set forth the following procedure for challenges to the accuracy of a PSIR:

A sentencing court must respond to challenges to the accuracy of information in a presentence report; however, the court has wide latitude in responding to these challenges. The trial court may determine that the challenged information is accurate, accept the defendant's version, or disregard the challenged information as irrelevant. If the court chooses to disregard the challenged information, it must indicate that it did not consider the information when fashioning the sentence and it must strike the information from the PSIR. [*Lucey*, 287 Mich App at 275 (quotation marks and citations omitted).]

In this case, the trial court properly accepted defendant's challenge to the PSIR, corrected the PSIR, and indicated that it did not consider whether defendant had bipolar disorder in fashioning its sentence. The court also indicated that it did not believe that the record supported the conclusion that impulsive acts stemming from bipolar disorder compelled defendant's criminal acts, on the ground that those actions required extensive deliberation in order for her to succeed without detection for the lengthy period involved. When, as here, "the trial court did not rely on the challenged information in the PSIR in sentencing defendant, resentencing is not required; rather, the remedy is to remand for the limited purpose of correcting the PSIR." *People v Spanke*, 254 Mich App 642, 650; 658 NW2d 504 (2003), overruled on other grounds *People v Barrera*, 500 Mich 14, 16; 892 NW2d 789 (2017). See also *People v Harmon*, 248 Mich App 522, 533; 640 NW2d 314 (2001).

Defendant also argues that her right to allocution was denied "because, fundamentally, the defendant the court *perceived* was not the *actual* defendant being sentenced and, because she was unaware of her illness." We disagree.

"The right of allocution allows a defendant 'to speak in mitigation of the sentence' and offers defendants 'an occasion to accept responsibility' and begin the process of atonement." *People v Bailey*, 330 Mich App 41, 66; 944 NW2d 370 (2019), quoting *People v Petty*, 469 Mich 108, 119-121; 665 NW2d 443 (2003). MCR 6.425(D)(1)(c) requires a sentencing court to "give the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence." In this case, defendant did address the trial court at sentencing, expressing her "sincerest apologies and regret" for exploiting her employer for personal gain, and for setting a poor example for her children. She also stated that she was "disgusted" that she let herself lose control and her judgment to become clouded. She asked for forgiveness and promised to carry on as the best possible version of herself.

Defendant argues that she "could not meaningfully allocute—explain in her own words how her illness impacted her behavior," because the trial court denied her motion for resentencing. However, because she spoke during sentencing, defendant did have the opportunity to inform the

court about how her mental state impacted her behavior, had she thought it important to do so. Were defendant given the opportunity for a second allocution by way of resentencing, she could add that she has been informed that certain thoughts, feelings, or behaviors were attributable to her bipolar disorder, but she could hardly suggest that her eventual understanding of her diagnosis had any effect on those thoughts and feelings as she actually experienced them, or those behaviors as she actually undertook them, while committing her crimes.

Further, defendant explained to the clinician that she had been on vacation with the company owner and his family multiple times before he employed her, and thus "got a taste for that lifestyle I thought I needed for me and my husband to just go and everything started." The examiner recorded that defendant experienced feelings of "elation and excitement when she made the transaction," but did not suggest that feelings of excitement and elation as might be present in a hypomanic episode preceded or prompted defendant's embezzling, or that symptoms of bipolar disorder were otherwise present during any of defendant's many instances of embezzlement over the years of her employment. Defendant's description to the examining professional of what propelled her to commit illegal acts was consistent with what she reported to the author of the PSIR, which the trial court properly considered for sentencing. According to the PSIR, defendant stated that she had suffered through a bad divorce, including financial problems such that those around her "watched her move back into her parent's house." Defendant expressed "the need to prove to everyone that she made it back from the divorce and impress her peers with her lifestyle," which "led to living above her means and stealing from her employer in order to portray a wealthy lifestyle."[1] Notably, defendant said that, rather than experiencing exhilaration before or after a theft, "she lived in fear every day of being caught," and felt "relief to finally face the charges." In light of this record, we conclude that the trial court did not deprive defendant of the opportunity to provide mitigating information to the court about her mental status during the commission of her crimes, including any information that would be considered a symptom of a mental illness by a person knowledgeable in that area.

Defendant also argues that the trial court based its decision to deny her motion for resentencing on unprincipled findings. However, the court's statements of which defendant makes issue were commentary, not findings. The trial court stated that it was surprised at defendant's diagnosis of bipolar disorder, and opined that a person with symptoms of narcissistic personality

---

[1] The PSIR describes how the embezzlement affected defendant's lifestyle as follows:

> Despite these positive factors in [defendant's] life, she chose to embezzle almost $700,000 from her employer and fellow employees for nine years. She utilized the stolen funds to live a life of luxury and appear financially successful in her social circle. As evidenced by credit card statements, defendant used company money to buy plane tickets for her entire family to Barbados, purchased Bob Segar and college football tickets, and paid to have Alaskan King Crab shipped to her. She continued her greed-driven thievery for years, using her employer's funds to pay her utility and phone bills, purchase shoes and clothing, and even stole from employees' paychecks in order to receive free health insurance. She victimized dozens of individuals, increasing the amounts and methods of embezzlement as time went on.

disorder would more likely have the mental status necessary to engage in a long pattern of embezzlement. The court also remarked that it was a "little bit insulting" to suggest that people with a bipolar disorder are inclined to steal because of the disorder, and spoke of a hypothetical trial in which defendant would be unlikely to succeed with a defense of insanity. The court thus indicated that its commentary, while perhaps unnecessary, was not a part of its reasoning at sentencing, or when denying defendant's motion for resentencing.

For these reasons, we hold that the trial court did not abuse its discretion by denying defendant's motion for resentencing insofar as it was based on her having later been diagnosed with bipolar disorder.

## III. DEPARTURE SENTENCE

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Review of a departure sentence is for an abuse of discretion, and considers whether the sentence violated the principles of reasonableness under the proportionality test. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).

When imposing a sentence, a court must use the applicable guidelines. MCR 6.425(D). This requires the court to consult the sentencing guidelines, calculate the recommended range for the minimum sentence, and take that range into consideration. *Lockridge*, 498 Mich at 391-392. However, the court is not compelled to impose a minimum sentence within the calculated range. *Id.* at 365. Although a sentencing court may depart from that range without stating substantial and compelling reasons for doing so, the sentence must be reasonable. *Id.* at 392.

In this case, the trial court sentenced defendant to a minimum term of 7 years' (84 months') imprisonment for her embezzlement and use-of-a-computer convictions, when the guidelines recommendation, as calculated for the embezzlement conviction, was 45 to 75 months. The imposed minimums thus exceeded the upper end of the recommended range by 9 months, or 12 percent. Defendant argues that the trial court errantly justified its departure on the basis of defendant's lack of remorse or conscience.

The "principal of proportionality requires 'sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 474, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). Factors bearing on the proportionality of a sentence include the following:

> (1) the seriousness of the offense, (2) factors that were inadequately considered by the guidelines, and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Steanhouse*, 313 Mich App at 46 (citations omitted).]

A trial court should also take " into account the nature of the offense and the background of the offender.' " *Id.* at 45, quoting *Milbourn*, 435 Mich at 651.

In this case, defendant's argument that the trial court's reasoning for the departure was defendant's lack of remorse and conscience poorly reflects the statements in the record. A sentencing judge may take a defendant's lack of remorse into consideration. *People v Walker*, 319 Mich App 344, 353; 901 NW2d 142 (2017). As stated, the trial court informed defendant that it was considering a sentence near the top or above the guidelines range because of the amount of money that was embezzled, and indicated it was important for defendant to explain where the money went. At sentencing, the court emphasized that defendant had betrayed her position as a fiduciary for the company soon after she started, and persisted in doing so over nine years, involving a large amount of money, thus harming a formerly stable company and its employees. The court further remarked that the instant case was the worst of embezzlement that had come before it. The court stated that "if we even agree upon the restitution figure $565,000 . . . you put a hundred-year-old company on the brink of insolvency." The court further noted that greed appeared to motivate defendant because the attendant purchases tended to be luxury items rather than necessities, and that she did not act on any feelings of remorse by selling any of the items in order to reimburse the victims. The court additionally noted that the embezzling stopped only when defendant was caught, and opined that it would otherwise likely have continued.

The trial court opined that a guidelines sentence would be "slightly inadequate" in these circumstances, and stated, "Now, I want the appellate courts to understand that I carefully considered the guideline range in this matter, and frankly, if I could and it was on there I'd . . . give you 10 years." The trial court elaborated as follows:

> If I could give you 10, I would, but I'm going up, I'm exceeding the guidelines and imposing seven years. And part of the reasons that I'm doing that is because I don't think the sentencing guidelines take into account the following: number one, the fact that this was going on nine years. Not just one year, two years, nine years. The fact that it imperiled the financial security of a company that's been in business for almost a hundred years. The fact that you even went so far as to steal from . . . multiple employees [while] entrusted in a position of a responsibility.
>
> I don't think the guidelines adequately reflect, since it charges over $100,000.00 . . . it doesn't reflect the fact that you stole over five times that amount, $565,145.79. And so I think those are not adequately considered by the sentencing guidelines and that's why I'm going up from 6.25 years to 7 years in the Department of Corrections. I think they're substantial, they're compelling, they're objective, they're verifiable. There's been lots of testimony that establishes those.

In sum, the trial court discussed factors mentioned in *Steanhouse*, 313 Mich App at 46, such as the seriousness of the offense, as well as factors not accounted for in the guidelines, relating in part to defendant's betrayal of her position of trust with her employer and coworkers, along with her lack of remorse, as well as the guidelines' inadequate consideration of the extended length and breadth of defendant's criminal conduct. The minimum sentence was a modest upward departure from the advisory guidelines range, and the trial court well justified it by reference to the facts of the case. We therefore conclude that the trial court well established on the record that its minimal departure was "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474.

Defendant further argues that her sentence is invalid because she did not offer a psychological explanation for her crime to the trial court, and because the trial court attributed her motivation to greed. However, as discussed, the trial court did not demand a psychological explanation for defendant's conduct, but did ask her what the money was used for, and whether acute financial problems motivated the thefts. The trial court stated as follows:

> You know, and throughout this whole thing I keep wishing—I don't hear that you had a casino gambling problem, . . . I haven't heard that you have a drug addiction problem. You know, . . . as [the prosecutor] said, it's about greed, it's about the fact that you could—you started it, you started taking it and you didn't even tell me what most . . . embezzler[s] say, well, Judge, I took a few thousand bucks, I was really behind in my bills and I was gonna put it back in. I'm not hearing that from you.

The trial court thus indicated that it was trying to unearth a financial reason for defendant's continuing to embezzle large amounts of money. Although the addictions that the trial court mentioned would be considered psychiatric diagnoses of conditions with the potential to bring about financial difficulties, and bipolar disorder is a psychiatric condition that can lead a person to engage in high-risk behaviors that have negative consequences, including legal problems, see DSM-5, p 481, defendant did not, in response to the trial court's inquiries, suggest that a mental condition caused any financial problems that she was attempting to ameliorate. The trial court's point was that defendant did not have a need to resort to embezzling other than to satisfy her greed. This conclusion was supported by the information in the PSIR that defendant said that she was motivated to embezzle by her desire to exhibit a lifestyle that would impress her peers. The PSIR also detailed luxury items that defendant had purchased. Therefore, as discussed, the trial court did not indicate that defendant's sentence was based on whether she had a psychological explanation for her crime, and the record supported the conclusion that greed was the major motivation.

For these reasons, we reject defendant's challenges to her sentences.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Michael J. Kelly

-8-