*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* CHRISTOPHER BIBBS, JR., Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Petitioner-Appellee,

v

CHRISTOPHER BIBBS, JR.,

　　　　　Respondent-Appellant.

UNPUBLISHED
September 28, 2023

No. 362217
Wayne Circuit Court
Family Division
LC No. 2016-522864-DJ

---

Before: SHAPIRO, P.J., and M.J. KELLY and CAMERON, JJ.

PER CURIAM.

Respondent appeals by right the trial court's May 27, 2022 judgment of sentence, which revoked an earlier order delaying sentence, and imposed a sentence of 50 to 120 months' imprisonment, with credit for 1,489 days served, for a 2016 carjacking conviction, MCL 750.529a.[1] For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

In two separate incidents in the summer of 2016, respondent, then 14 years old, and another juvenile allegedly committed carjackings. The prosecution filed two petitions, each alleging that respondent committed one count of carjacking, MCL 750.529a, and one count of armed robbery, MCL 750.529. The petitions asserted that respondent came within the jurisdiction of the family division of the circuit court under MCL 712A.2.[2] Pursuant to MCL 712A.2d(1), the prosecution

---

[1] As used in this opinion, "trial court" or "court" refers to the family division of the circuit court unless a different tribunal is specified. See MCR 3.903(4); MCL 712A.1(e).

[2] Under MCL 712A.2(a)(1), "The court has jurisdiction over a juvenile 14 years of age or older who is charged with a specified juvenile violation only if the prosecuting attorney files a petition

-1-

designated respondent to be tried as an adult.[3]  Respondent and his juvenile codefendant eventually pleaded guilty to one count of carjacking in one petition in exchange for dismissal of the other counts and the other petition.  The trial court accepted respondent's plea and entered a judgment of conviction.

In October 2016, the trial court held a dispositional hearing[4] and formulated a sentence of 35 to 180 months' imprisonment for respondent's carjacking conviction.  However, the trial court delayed imposing the sentence, and ordered that respondent be subject to juvenile probation in a level-two (out-of-home) placement.  See MCL 712A.18(1)(o).[5]  The terms of his probation included that respondent not violate the criminal law of any unit of government.

Respondent was thereafter placed in a secure level-two residential facility, where he received therapeutic and educational services.  By February 2018, he successfully completed the program requirements, and the trial court, pursuant to a petition, deescalated respondent to placement in a nonsecure facility.[6]  In September 2018, after completing the nonsecure facility's

---

in the court instead of authorizing a complaint and warrant."  Carjacking, MCL 750.529a, is a specified juvenile violation.  See MCL 712A.2d(9)(a); MCR 3.903(D)(8)(k).

[3] Under MCL 712A.2d(1), "In a petition or amended petition alleging that a juvenile is within the court's jurisdiction under [MCL 712A.2(a)(1)] for a specified juvenile violation, the prosecuting attorney may designate the case as a case in which the juvenile is to be tried in the same manner as an adult."  See also MCR 3.903(D)(6).

[4] "A dispositional hearing is conducted to determine what measures the court will take with respect to a juvenile . . . once the court has determined following trial or plea that the juvenile has committed an offense."  MCR 3.943(A).  Following a conviction of a violation of a designated offense, including carjacking, MCL 750.529a, the trial court must enter a disposition or impose sentence.  MCL 712A.2d(8); MCR 3.955(A).

[5] Under MCL 712A.18(1)(o), "[t]he court may delay imposing a sentence of imprisonment . . . for a period not longer than the period during which the court has jurisdiction over the juvenile . . . by entering an order of disposition delaying imposition of sentence and placing the juvenile on probation upon the terms and conditions it considers appropriate . . . ."  See also MCR 3.955(D). If the court orders a delayed sentence, it retains jurisdiction to impose an adult sentence.  See MCL 712A.18i(1).  The court may commit the juvenile to a "public institution, county facility, institution operated as an agency of the court or county, or agency authorized by law to receive juveniles . . . ."  MCL 712A.18(1)(e).

[6] A trial court with jurisdiction over a juvenile must hold periodic dispositional review hearings. See MCR 3.945(A); MCL 712A.18d.  Additionally, under MCL 712A.18i, which applies if the trial court delays imposing sentence, MCL 712A.18(1)(o), the court is required to periodically review the juvenile's probation, including the services provided, placement, and progress, and to determine whether the juvenile has been rehabilitated or presents a serious risk to public safety. MCL 712A.18i(2) ("The court may order changes in the juvenile's probation based on the review including but not limited to imposition of the sentence.") and (3) ("[T]he court shall conduct a

program requirements, respondent was further deescalated to placement in his mother's home, with continued services in place.[7]

Beginning in December 2018, respondent began testing positive for marijuana. Several months later, he stopped complying with drug screens altogether and was no longer meeting with his case manager. In November 2019, respondent, who was then 17 years old, "went AWOL" (absent without leave of the court) in violation of his probation after failing to appear at two court hearings and a psychiatric evaluation. In response to a petition filed by respondent's case manager, the trial court authorized level-two probation for inpatient substance abuse treatment. Subsequently, the court ordered that respondent be apprehended and detained. Respondent remained AWOL for approximately 16 months.

During his AWOL status, respondent was arrested in Detroit, in March 2021, and charged with domestic violence, which, according to respondent's mother, stemmed from an altercation between respondent and the mother of his child. Respondent's arrest resulted in adult felony charges in Wayne Circuit Court, including two counts of felonious assault, MCL 750.82, and two counts of possession of a firearm during the commission of a felony, MCL 750.227b.[8] Additionally, in December 2020 or January 2021, respondent was arrested in Ohio on other felony charges.

In August 2021, the trial court held a hearing to determine whether to extend its jurisdiction over respondent until he turned 21.[9] At that time, respondent, then 19 years old, remained detained on the felony charges pending in Wayne Circuit Court, and also had a "writ of apprehension" for the outstanding Ohio charges. Respondent's attorney moved to dismiss his juvenile case on the basis that he had attained age 19 and had pending matters in adult court, while the prosecution asked the court to extend its jurisdiction over respondent and impose a sentence under MCL 712A.18i(3) and (7). The trial court extended its jurisdiction over respondent until he reached age 21, explaining that respondent "was adjudicated on a serious offense, carjacking, he did not complete probationary services, he went AWOL from court jurisdiction, and has incurred multiple police contacts and 2 arrests[.]" The trial court further contended that respondent "ha[d] not been rehabilitated and continue[d] to present a serious risk to public safety." The trial court did not

_____

review hearing to determine whether the juvenile has been rehabilitated and whether the juvenile presents a serious risk to public safety."). See also MCR 3.956(A)(1)(a)(i).

[7] Pursuant to MCL 712A.18(1)(b), the trial court may "[p]lace the juvenile on probation, or under supervision in the juvenile's own home or in the home of an adult who is related to the juvenile."

[8] A subsequently filed Presentence Investigation Report indicates that these offenses occurred on October 15, 2020, in which case respondent would have been 18 years old.

[9] In a designated case such as this one, the trial court's jurisdiction may be extended until a juvenile reaches age 21. See MCR 712A.2a(5).

immediately decide whether to impose a sentence of incarceration, but continued the proceedings for a hearing on a probation-violation petition.[10]

In February 2022, respondent, pursuant to his guilty plea to the pending felonious-assault and felony-firearm charges, was sentenced in Wayne Circuit Court as a youthful trainee under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, to serve 14 months' to 4 years' imprisonment for the felonious-assault conviction, and two years' consecutive imprisonment for the felony-firearm conviction, with credit for 324 days served.

In May 2022, following several continuances, the trial court held the hearing on the probation-violation petition. Respondent's case manager testified that, although respondent was initially compliant with his probation terms and did everything asked of him, he ultimately failed to comply when he "went AWOL" in November 2019, incurred additional criminal charges, used marijuana, and stopped his regular school attendance. Respondent's case manager opined that 2 to 4 years in prison was sufficient "for the time he has served at juvenile[.]" She recommended that respondent's juvenile case be terminated, because he could not receive attendant services while he was in the custody of the Department of Corrections on the adult charges.

The prosecution asked the trial court to sentence respondent as an adult for his 2016 carjacking conviction. Respondent's attorney asked the trial court instead to close out the juvenile case and "just let him serve out" his current HYTA sentence, on the grounds that respondent would have the opportunity to benefit from services, including earning his GED and learning a trade, while serving the HYTA sentence.

The trial court revoked the delayed sentence and imposed a sentence of 50 months' to 10 years' imprisonment, with credit for 1,489 days served,[11] to run concurrently to his felonious-assault sentence. The court recognized that respondent was a "very young person," but "had numerous difficulties while on delayed sentence status," including being AWOL for 16 months, and having police contact in both Ohio and Wayne County, the latter being where he incurred the felonious-assault and felony-firearm charges in violation of his probation. The court further recognized that it did not have "a lot of options" because respondent was incarcerated on the adult charges at the time. In imposing imprisonment, the court explained that respondent "clearly violated the delayed sentence," but that "he has a lot of potential," and that "the adult court did give him some opportunity by allowing him to have HYTA status." The court further explained that "on a practical level [his sentence] isn't going to add any . . . significant amount of time to the sentence that he's serving for the felonious assault because the felonious assault is 14 . . . months to 4 years," and the instant "minimum on this sentence is going to be barely above the credit that he's

---

[10] MCL 712A.18i(9) and (10) permits the trial court to impose sentence where a juvenile violates probation. See also MCR 3.956(B)(1) and (2). MCR 3.944(C) governs the probation violation hearing. See MCR 3.956(B)(3).

[11] Under MCL 712A.18i(11), a juvenile must receive credit for time served on probation.

-4-

entitled to on this sentence." The court added, however, that the new sentence's maximum of 10 years would extend the period during which respondent would be subject to supervision.

## II. ANALYSIS

Respondent argues that the trial court abused its discretion by revoking his delayed sentence and imposing a sentence of imprisonment. We disagree.[12]

Pursuant to MCL 712A.18(1)(o), the trial court initially delayed sentencing respondent as an adult for his carjacking conviction and ordered juvenile probation. MCL 712A.18i applies where the trial court delays sentencing. See MCL 712A.18(1)(o). Under MCL 712A.18i(1), the trial court retains jurisdiction to sentence a juvenile as an adult any time during the delayed sentence.

MCL 712A.18i(3) governs review hearings in delayed-sentence cases:

If the court entered an order of disposition under section 18(1)(o) of this chapter delaying imposition of sentence, the court shall conduct a review hearing to determine whether the juvenile has been rehabilitated and whether the juvenile presents a serious risk to public safety. If the court determines that the juvenile has not been rehabilitated or that the juvenile presents a serious risk to public safety, jurisdiction over the juvenile shall be continued or the court may impose sentence. In making this determination, the court shall consider the following:

(a) The extent and nature of the juvenile's participation in education, counseling, or work programs.

(b) The juvenile's willingness to accept responsibility for prior behavior.

(c) The juvenile's behavior in his or her current placement.

(d) The prior record and character of the juvenile and his or her physical and mental maturity.

---

[12] "This Court reviews sentencing decisions for an abuse of discretion." *People v Skinner*, 502 Mich 89, 131; 917 NW2d 292 (2018). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Coleman*, 327 Mich App 430, 443; 937 NW2d 372 (2019) (quotation marks and citation omitted). This Court reviews a sentencing court's findings of fact for clear error. *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *Id.* (quotation marks and citation omitted). This Court reviews de novo the interpretation and application of statutes and court rules. *People v Parker*, 319 Mich App 664, 669; 903 NW2d 405 (2017).

(e) The juvenile's potential for violent conduct as demonstrated by prior behavior.

(f) The recommendations of any institution or agency charged with the juvenile's care for the juvenile's release or continued custody.

(g) Other information the prosecuting attorney or juvenile may submit.

See also MCR 3.956(A)(4)(a) (providing that, before the trial court may continue jurisdiction over a juvenile or impose a sentence, the prosecuting attorney must demonstrate by a preponderance of evidence that the juvenile has not been rehabilitated or presents a serious risk to public safety, in light of the same factors).

Further, MCL 712A.18i(7) requires the trial court in a delayed-sentence case to conduct a final review hearing as follows:

The court shall conduct a final review of the juvenile's probation not less than 3 months before the end of the probation period. If the court determines at this review that the best interests of the public would be served by imposing any other sentence provided by law for an adult offender, the court may impose the sentence. In making its determination, the court shall consider the criteria specified in subsection (3) and all of the following criteria:

(a) The effect of treatment on the juvenile's rehabilitation.

(b) Whether the juvenile is likely to be dangerous to the public if released.

(c) The best interests of the public welfare and the protection of public security.

See also MCR 3.956(A)(4)(b) (providing the same criteria).

Finally, MCL 712A.18i(9) and (10) govern violations of probation in delayed-sentence cases:

(9) If a juvenile placed on probation under an order of disposition delaying imposition of sentence is found by the court to have violated probation by being convicted of a felony or a misdemeanor punishable by imprisonment for more than 1 year, or adjudicated as responsible for an offense that if committed by an adult would be a felony or a misdemeanor punishable by imprisonment for more than 1 year, the court shall revoke probation and sentence the juvenile to imprisonment for a term that does not exceed the penalty that could have been imposed for the offense for which the juvenile was originally convicted and placed on probation.

> (10) If a juvenile placed on probation under an order of disposition delaying imposition of sentence is found by the court to have violated probation other than as provided in subsection (9), the court may impose sentence . . . .[13]

See also MCR 3.956(B)(1) and (2).

Initially, the trial court held that MCL 712A.18i(9) did not mandate imprisonment for the carjacking conviction as a result of his charges of felonious-assault and felony-firearm incurred during his delayed-sentence status, because, although he pleaded guilty to those charges, he was assigned HYTA status, which is not a "conviction." The court thus relied on MCL 712A.18i(7) and (10).

There is no dispute that respondent violated his probation, thus permitting the trial court to revoke his probation and impose imprisonment. See MCL 712A.18i(10); MCR 3.956(B)(2). The court found that respondent experienced "numerous difficulties while on delayed sentence status" and clearly violated his probation terms by being AWOL for approximately 16 months, during which he incurred additional criminal charges in Michigan and Ohio. These findings were amply supported by the record.

The same facts likewise support the trial court's imposition of an adult sentence under MCL 712A.18i(7) and MCR 3.956(A)(4). The court determined that respondent had not achieved rehabilitation and thus presented a serious risk to public safety.[14] See MCL 712A.18i(3), (7)(a), and (7)(b). It is evident that the trial court appropriately considered the pertinent statutory factors. Specifically, the court found that respondent initially made progress and complied with services, but eventually "completely stopped" services, went AWOL from November 2019 to March 2021, until he was apprehended on a writ, and did not complete his probation. See MCL 712A.18i(3)(a)

---

[13] Alternatively, MCL 712A.18i(10)(a) through (g) provide that the trial court may order a change of placement, community service, substance use disorder counseling, mental health counseling, participation in a vocational-technical education program, incarceration in the county jail for not more than 30 days, or other participation or performance as the court considers necessary. As the trial court noted, these options were largely precluded because respondent was serving his HYTA sentence.

[14] The trial court made these findings at the required review hearing to determine whether to extend its jurisdiction over respondent, but did not impose a sentence at that time. See MCL 712A.18i(4); MCR 3.956(A)(1)(a)(iii). Instead, the court extended its jurisdiction over respondent until he reached age 21 and adjourned its hearing on the probation violation concerning whether to resort to imprisonment. See MCL 712A.2a(5) (a court exercising jurisdiction over a juvenile in a designated case may continue that jurisdiction until age 21). Again, respondent was AWOL when he turned 19 in March 2021, resulting in several adjournments of the required review hearing and the probation-violation hearing. In deciding whether to continue jurisdiction over a juvenile, the trial court is similarly tasked with determining whether the juvenile has been rehabilitated or presents a serious risk to public safety. MCL 712A.18i(3); MCR 3.956(4)(a). See also MCR 3.945(B)(4).

and (c); MCR 3.956(A)(4)(a)(i) and (iii) (directing the court to consider participation in services and behavior in the current placement); MCL 712A.18i(7)(a); MCR 3.956(A)(4)(b)(i) (directing the court to consider the effect of treatment on rehabilitation). Again, the court noted that respondent had incurred multiple arrests with criminal charges while AWOL, including other felony offenses involving firearms, and characterized his prior carjacking offense as a "very serious charge" involving "violent contact." See MCL 712A.18i(3)(d) and (e); MCR 3.956(A)(4)(a)(iv) and (v) (directing the court to consider the juvenile's record, character, maturity, and potential for violent conduct); MCL 712A.18i(7)(b) (directing the court to consider whether the juvenile is likely to be dangerous to the public if released). Consistent with the case manager's testimony regarding respondent's probation violations, and her recommendation to terminate respondent's juvenile case because her agency could no longer service him in any capacity, the court noted that it did not have many options left because respondent was currently in the custody of the Department of Corrections, given his sentences for felonious-assault and felony-firearm. See MCL 712A.18i(3)(f); MCR 3.956(A)(4)(a)(vi) (directing the court to consider the recommendations of the agency charged with the juvenile's care). These findings—that respondent was not rehabilitated, continued to participate in violent criminal activity, continued to present a danger to public safety, and, as the court found in its written order, that the public's best interests would be served by sentencing respondent as an adult—were well supported by the record.

Overall, the record demonstrates that the trial court appropriately considered the factors set forth in MCL 712A.18i and MCR 3.956 in deciding to sentence respondent as an adult.[15] Given respondent's clear rehabilitation failures and probation violations, we see no abuse of discretion in the court's decision to revoke his juvenile probation and impose a sentence of imprisonment under MCL 712A.18i.

Respondent, however, argues that the trial court abused its discretion by failing to give due consideration to his adolescence. He asserts that youthful offenders differ from adult offenders for purposes of sentencing, that youth is a mitigating factor, and that courts must consider the opportunity to rehabilitate. According to respondent, because his HYTA sentence adequately met

---

[15] Although the trial court did not make specific findings on the record regarding respondent's willingness to accept responsibility for his behavior, pertinent information was before the court because respondent stated, "I made plenty of mistakes and I take accountability for them." Further, the court recognized that respondent was a young person with much potential.

In *People v Petty*, 469 Mich 108, 116-118; 665 NW2d 443 (2003), the Supreme Court, addressing the statutory criteria for determining whether to enter an order of disposition, impose a delayed sentence, or impose an adult sentence under MCL 712A.18(1)(o)(*i*) through (*vi*), held that trial courts are not required "to undertake a mechanical recitation of the statutory criteria. Rather, a court must logically articulate on the record why it has chosen one alternative over the other two, in light of the criteria articulated" in the statute. *Petty*, 469 Mich at 117. Likewise, a trial court should not be required to mechanically recite each of the factors in MCL 712A.18i(3) and (7). The trial court in this case reasonably explained why it imposed imprisonment on respondent in light of the pertinent criteria.

those rehabilitative goals, the trial court abused its discretion by imposing a term of imprisonment. We disagree.

Respondent first directs this Court to *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 599 (2016), where the United States Supreme Court held "that mandatory life without parole for those under age 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " This Court summarized *Miller*'s import as follows:

> *Miller*'s holding is grounded in the propositions that "children are constitutionally different from adults for purposes of sentencing," "have diminished culpability and greater prospects for reform," and "are less deserving of the most severe punishments." *Id.* at 471 (quotation marks and citation omitted). The "distinctive attributes of youth" render the customary penological justifications for harsh sentencing—retribution, deterrence, and incapacitation—far less relevant in the context of minors. *Id.* at 472-473. Rather than focusing on that traditional trio of sentencing factors, *Miller* requires judges to bear in mind that youth "is a time of immaturity, irresponsibility, impetuousness[,] and recklessness." *Id.* at 476 (quotation marks and citation omitted; alteration in original). These qualities, the Court stressed, are almost always "transient." *Id.* (quotation marks and citation omitted). [*People v Bennett*, 335 Mich App 409, 415; 966 NW2d 768 (2021).]

Respondent further directs this Court to the Supreme Court's holding in *People v Parks*, 510 Mich 225, 255; 987 NW2d 161 (2022), that "mandatorily subjecting 18-year-old defendants to life in prison, without first considering the attributes of youth, is unusually excessive imprisonment and thus a disproportionate sentence that constitutes 'cruel or unusual punishment' under Const 1963, art 1, § 16." The Court recognized "the clear consensus" that late adolescence, including the age of 18, is a "key stage of development characterized by significant brain, behavioral, and psychological change" relevant to criminal culpability. *Parks*, 510 Mich at 249.

Respondent also refers this Court to *People v Boykin*, 510 Mich 171; 987 NW2d 58 (2022), in which the Supreme Court recognized that "special consideration must be paid to youthful offenders before the harshest sentences may be imposed," *id.* at 185, and decreed, "consistent with the [United States] Supreme Court's repeated recognition of youth's effect on sentencing and our own sentencing jurisprudence, that in all sentencing hearings conducted under MCL 769.25 or MCL 769.25a, trial courts are to consider the defendant's youth and must treat it as a mitigating factor." *Boykin*, 510 Mich at 189.[16]

The foregoing caselaw concerned adolescents who committed first-degree murder and were thus potentially subject to nonparolable life sentences, which is not at issue here. Still, the

---

[16] In enacting MCL 769.25 and MCL 769.25a, the Legislature provided for "a sentencing scheme that eliminated mandatory life without the possibility of parole for all individuals who were convicted of specific crimes, including first-degree murder, for acts committed while they were juveniles." *Boykin*, 510 Mich at 180.

caselaw emphasizes the special importance of rehabilitation as a goal in sentencing adolescents, and, "[g]iven that youth is a mitigating factor, it will inevitably factor into" the four basic sentencing considerations, *Boykin*, 510 Mich at 189, meaning "(1) 'reformation of the offender'; (2) 'protection of society'; (3) 'disciplining of the wrongdoer'; and (4) 'deterrence of others from committing like offenses,' " *Boykin*, 510 Mich at 188, quoting *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1974). Pertinent here, "[r]ehabilitation is a specific goal of our criminal-punishment system[,]" *Parks*, 510 Mich at 265, and "18-year-olds, much like their juvenile counterparts, are generally capable of significant change and a turn toward rational behavior that conforms to societal expectations as their cognitive abilities develop further." *Id*. at 258.

Contrary to respondent's argument, the record indicates that the trial court appropriately considered respondent's adolescence throughout the proceedings, and afforded him ample opportunity to rehabilitate. Again, in 2016, following respondent's carjacking conviction when he was 14 years old in this adult-designated case, the trial court delayed imposing an adult sentence and ordered juvenile probation. Yet, despite significant rehabilitative efforts during his delayed status, respondent, as discussed, eventually absconded from probation when he was 17 years old, remained AWOL until he was apprehended on a writ 16 months later, and committed additional crimes during that time when he was 18 years old. In revoking his juvenile probation and imposing an adult sentence, the trial court noted respondent's difficulties while on probation, and specifically considered his youth, stating this was "a very unfortunate case because [respondent] is a very young person," and recognized it was obliged "to consider that he's a young person, that he has a lot of potential, [and] that the adult court did give him some opportunity by allowing him to have HYTA status."

Further, the trial court did not deprive respondent of a rehabilitative opportunity. The court's sentence of 50 months' to 10 years' imprisonment, with credit for 1,489 days served, indicates that the court attempted to fashion a sentence that accounted for his youth. The court stated that the sentence, in light of the credit for time served, would not "add any significant amount of time" to the sentence respondent was currently serving under the HYTA, because the 50-month minimum was "barely above the amount of credit he's entitled to on this sentence," but that the 10-year maximum would provide respondent with an additional supervisory period.[17]

For these reasons, we conclude that the trial court's sentencing decision adequately recognized the gravity of respondent's carjacking offense, in light of his failure to achieve rehabilitation during a lengthy period of juvenile probation, and that the court afforded respondent properly-individualized consideration of the sentencing goals of protecting society, deterrence, and discipline, while still providing respondent the opportunity to demonstrate maturity and rehabilitation to expedite his release. Accordingly, the trial court's decision to impose an adult sentence on respondent, and the sentence actually imposed, fell within the range of principled

---

[17] A sentencing court should not refer to the maximum sentence as a mere "supervisory period" because defendants are not guaranteed parole prior to the completion of the maximum sentence. However, under the circumstances of this case, the trial court's failure to appreciate that fact does not amount to an abuse of discretion.

outcomes, and so did not constitute an abuse of discretion.  See *People v Coleman*, 327 Mich App 430, 443; 937 NW2d 372 (2019).

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Thomas C. Cameron