*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERICK THURMAN SCOTT, JR.,

Defendant-Appellant.

UNPUBLISHED
April 11, 2024

No. 362534
Genesee Circuit Court
LC No. 21-047640-FC

Before: GADOLA, C.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony murder, MCL 750.316(1)(b), first-degree home invasion, MCL 750.110a(2), felon in possession of a firearm, MCL 750.224f(1), carrying a concealed weapon (CCW), MCL 750.227, felonious assault, MCL 750.82, domestic violence, MCL 750.81(2), and four counts of possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of life without parole for the murder conviction, 140 months to 20 years for the home-invasion conviction, two to five years each for the felon-in-possession and CCW convictions, 18 months to 4 years for the felonious assault conviction, and 93 days (time served) for the domestic violence conviction, to be served consecutively to four concurrent two-year terms of imprisonment for the felony-firearm convictions. We affirm.

## I. FACTS

On the night of November 5, 2019, or early morning of November 6, 2019, defendant entered the Flint home of his former girlfriend, Ayisha Davis, without her permission, assaulted Davis, and fatally shot her friend, Larry Jones. Davis and defendant had been intermittently involved in a three-year relationship, which Davis ended approximately one month before the offense. That night, Davis and Jones were at her apartment when defendant began yelling outside the apartment and kicking the front door. Davis saw defendant run back and forth between the front window of the apartment and the back patio sliding-glass door. When defendant shattered the front window, Davis opened the front door to escape. Defendant, who was armed with a handgun, entered through the front door, pushed Davis down, and ran after Jones who had run

-1-

toward the patio door. As Davis fled through the front door, she heard gunshots. Jones was later found in the backyard of Davis's apartment, with nine gunshot wounds from which he later died. At trial, the defense argued that Davis's testimony was inconsistent and not credible, and did not support a finding of first-degree felony murder. The jury found defendant guilty as charged.

## I. DISCUSSION

## A. RIGHT OF ALLOCUTION

Defendant contends that he is entitled to resentencing because the trial court violated his right of allocution by allowing Jones's mother to display an urn containing Jones's remains and photographs of Jones in a casket during her oral victim impact statement, which defendant asserts discouraged him from speaking. Defendant also asserts that defense counsel was ineffective for failing to object to the display of the items. We disagree.

An alleged violation of the right of allocution is a question of law that ordinarily we review de novo. *People v Dixon-Bey*, 340 Mich App 292, 296; 985 NW2d 904 (2022). Defendant did not preserve this challenge by objecting or otherwise raising this claim at sentencing. See *People v Bailey*, 330 Mich App 41, 66; 944 NW2d 370 (2019). We review defendant's unpreserved claim of error for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is "clear or obvious." *Id*.

MCR 6.425(D)(1)(c) requires the court to give the defendant an opportunity to advise the court of any circumstances that he or she believes the court should consider when imposing sentence. The purpose of the right of allocution is to allow a defendant "to speak in mitigation of the sentence," *People v Petty*, 469 Mich 108, 119; 665 NW2d 443 (2003), and thus to "ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence." *Id*. at 119 n 7, quoting *Black's Law Dictionary*, (7th ed).

Before imposing sentence in this case the trial court offered defendant the opportunity for allocution. The trial court addressed defendant, stating: "Now is the time if there is anything you would like to say to the court, you may." Defendant responded: "No." The trial court inquired again, asking: "No?" Defendant again stated: "No." The trial court complied with MCR 6.425(D)(1)(c) by providing defendant the opportunity to address the court before imposing sentence; defendant chose not to do so.

On appeal, defendant argues that the opportunity for his allocution was "illusory" and "superficial" because he was discouraged from speaking by the victim impact statement made by the victim's mother. During her statement, the trial court permitted Jones's mother to display an urn containing her son's remains and a poster board displaying photographs of his open-casket funeral. The trial court denied defendant's motion for resentencing, noting that defendant failed to provide authority to support his contention that the urn and photographs interfered with his right of allocution.

On appeal, defendant relies on this Court's decision in *Dixon-Bey*, 340 Mich App 292, in which this Court held that the "defendant was offered only an illusory and superficial opportunity for allocution" because the trial court interrupted the defendant's allocution on multiple occasions,

essentially cross-examining her. This Court concluded that the exchange and frequent interruptions in that case intimidated the defendant and "actively prevented [her] from expressing remorse and responsibility." *Id*. at 302. Unlike *Dixon-Bey*, the trial court in this case did not interrupt, restrict, or discourage defendant from addressing the court. Rather, defendant contends that he was precluded from allocution by his own reluctance to speak after hearing the victim's mother's statement and seeing the photographs and urn.

Defendant's reticence after being confronted with the victim's mother's grief does not establish a violation of defendant's right of allocution. Victims, as well as defendants, have a right to advise the court of any circumstances they believe the court should consider when imposing sentence. MCL 780.765(1); MCR 6.425(D)(1)(c). A victim impact statement may be powerfully emotional, but a defendant who feels discouraged or shaken when confronted with the results of his crime has not thereby been denied the right of allocution under MCR 6.425(D)(1)(c). Defendant's decision to waive allocution was a choice, just as defendant's actions on November 5-6, 2019, were a choice. Accordingly, the record does not support defendant's claim that he was denied allocution.

Defendant also asserts that defense counsel was ineffective for failing to object to the display of the items. To establish ineffective assistance of counsel, a defendant must demonstrate that his or her attorney's performance fell below an objective standard of reasonableness resulting in prejudice to the defendant, meaning that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceedings would have been different. *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020). Here, because defendant was not denied allocution by the victim impact statement, defense counsel's failure to object to Jones's mother's display of the two items during her statement was not objectively unreasonable. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (Failure to advance a futile objection or meritless argument does not constitute ineffective assistance of counsel). Defendant therefore has not established a claim of ineffective assistance of counsel on this basis.

## B. AUTOPSY PHOTOGRAPHS

Defendant contends that the trial court erred by permitting the prosecutor to introduce into evidence autopsy photographs, which defendant contends were so prejudicial that they rose to the level of prosecutorial misconduct. Defendant also asserts that defense counsel was ineffective for failing to object to all but three of the autopsy photographs admitted. We disagree.

To preserve a challenge of prosecutorial misconduct, a defendant must "contemporaneously object and request a curative instruction." *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). Defendant did not object at trial to the prosecutor's conduct of presenting the autopsy photographs for admission, but rather objected only on an evidentiary basis. We review his unpreserved claim of prosecutorial misconduct for plain error affecting defendant's substantial rights. See *id*.

The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A claim of prosecutorial misconduct must be evaluated based upon the entire record. *Id*. In this case, defendant has not demonstrated that the prosecutor engaged in misconduct by introducing the

autopsy photographs into evidence during trial. A "prosecutor's good-faith effort to admit evidence does not constitute misconduct," *id*. at 70, and there is nothing in the record in this case to support that the prosecutor acted in bad faith in moving for the admission of the photographs.

We also conclude that the trial court did not abuse its discretion by admitting the photographs, nor did the trial court plainly err. Ordinarily, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. See *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). However, to preserve an evidentiary issue for appeal, the party opposing the admission of the evidence must object at trial and specify the same grounds for the objection as raised on appeal. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Defendant objected at trial to the admission of four autopsy photographs, three of which were admitted, but did not object to any additional autopsy photographs at trial. We review unpreserved claims of evidentiary error for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

"A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). Generally, photographic evidence is admissible if it is relevant and not unduly prejudicial. *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2019), citing MRE 401 and MRE 403. At the time of trial in this case, MRE 401 provided that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Photographic evidence may be used to corroborate witness testimony, and is not inadmissible merely because a witness could testify orally about the same subject matter. *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995). Exclusion is required only when the danger of unfair prejudice from the admission of the photographs substantially outweighs the probative value of the evidence. *Id*. Photographs that are calculated solely to arouse the sympathies and prejudices of the jury should not be admitted, *People v Howard*, 226 Mich App 528, 549; 575 NW2d 16 (1997), but a photograph admissible for a proper purpose is not "rendered inadmissible because it brings vividly to the jurors the details of a gruesome or shocking accident or crime." *Brown*, 326 Mich App at 193, quoting *Howard*, 226 Mich App at 549-550. Specifically, autopsy photographs may be relevant to illustrate the nature, type, and location of the victim's injuries and may be necessary to augment complex medical testimony. *People v Unger*, 278 Mich App 210, 257; 749 NW2d 272 (2008). Photographs also can be relevant to establish the elements of a crime, such as the intent element of first-degree murder. *People v Mesik (On Reconsideration)*, 285 Mich App 535, 544; 775 NW2d 857 (2009).

In this case, the photographs were relevant to corroborate the medical examiner's testimony. He testified that the photographs would assist him to explain to the jury the basis of his opinion, and, indeed, he used them to testify regarding Jones's injuries and cause of death. See *Unger*, 278 Mich App at 257. Defendant was charged with first-degree felony murder, and a malicious intent is an essential element of that offense. *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007). The photographs were instructive in depicting the location, nature, and severity of the injuries, which was relevant to show that defendant intended to kill, to do great

bodily harm, or to create a very high risk of death when he repeatedly shot Jones.[1] The fact that defendant did not dispute the cause of death does not render the photographs inadmissible; the prosecution was required to prove all elements of the offense even if not disputed by defendant. *Mesik*, 285 Mich App at 544.

Here, the trial court examined the photographs, the medical examiner explained each photograph's necessity, and the trial court admitted only three of the four photographs that defendant challenged, demonstrating that the trial court weighed the probative value of the photographs against their potentially prejudicial nature. See *People v Herndon*, 246 Mich App 371, 414; 633 NW2d 376 (2001). We conclude that the trial court did not abuse its discretion by admitting the photographs.

Defendant also argues that defense counsel was ineffective for failing to object to additional autopsy photographs admitted during trial. When denying defendant's motion for a new trial on this basis, the trial court ruled that, had defense counsel objected, it would not have excluded the other photographs. Because the photographs that defendant now challenges were admitted for a proper purpose and were not rendered inadmissible by the gruesome subject matter they depict, defense counsel's failure to object to the photographs was not objectively unreasonable. Again, failure to advance a futile objection does not constitute ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201.

## C. DAVIS'S TESTIMONY

Defendant contends that a portion of Davis's testimony violated his due-process right to a fair trial and his right to remain silent, and that defense counsel was ineffective for failing to object to the testimony. Because defendant failed to raise this objection to Davis's testimony before the trial court, the challenge is unpreserved. See *Brown*, 326 Mich App at 191-192. We therefore review this issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 752-753.

At defendant's preliminary examination, Davis did not appear and the prosecutor requested an adjournment to obtain a material witness warrant. At the rescheduled hearing, Davis appeared but was reluctant to testify. The preliminary examination was again rescheduled, and at the third hearing Davis overcame her reluctance and testified in detail.

At trial, the defense argued that Davis's testimony was not credible because she had been reluctant to testify at the preliminary examination. In defense counsel's opening statement, counsel suggested that Davis's reluctance to appear at the earlier hearings was "because something

---

[1] The elements of first-degree felony murder are (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, and (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b). *Smith*, 478 Mich at 318-319.

is wrong with the information that she had originally given to police." In response, the prosecutor questioned Davis about her earlier reluctance to testify, and the following exchange occurred:

*The prosecutor*: And did there come a time that later you were asked to testify in another hearing?

*Davis*: Yes.

*The prosecutor*: And how did that hearing go?

*Davis*: The first one didn't go well 'cause I kind of, I ain't gonna lie, I did kind of choke[] up. Like this is hard. This right here is hard.

\* \* \*

The first time, yeah, it was kind of hard for me. So, I didn't off—you know, say anything, but the second one, I did.

*The prosecutor*: Okay.

*Davis*: I had—it gave me time—I didn't have a chance to heal. Everything just happened so fast. But the second time, I finally woke up because I lost a brother and it's not fair. It's not fair for him to lose his life over this.

*The prosecutor*: And the first time when you say it was hard, can you tell me a little bit more about what you mean when you say that it was hard[?]

*Davis*: The—it's a lot about streets. You know, when you in the streets, they think everything's snitching, but there's a difference when your life [is] in danger. When he could prevent that, he should have just stayed his self away from me. When the policeman called the first time to stay away, *you should have listened to that and stay[ed] away. If I was gone from my house for a month, you don't have no business coming back.*

And then my child, I have a 7-year-old. What if Larry didn't show up and I stayed home that night? *It could have been my child['s] life* and my child play[ing] in that living room. And don't nobody understand that, and *it's not fair and Larry need[s] justice. And his family need[s] closure.* And I'm going to do whatever it takes. I lost a brother and I know how it feel.

*The prosecutor*: So, if I'm getting what you're saying, it's a very stressful and traumatic situation?

*Davis*: Yes.

*The prosecutor*: But it's hard to come to court and want to participate in things like this?

*Davis*: Yes, because there's a lot of people just think, they don't look at as if—as you're doing the right thing, they look at you as a snitch.

*The prosecutor*: Okay. And was that part of the reason why you weren't—

*Davis*: Yes.

*The prosecutor*: —remembering everything when you testified the first time?

*Davis*: Yes.

*The prosecutor*: Were you trying to hide anything?

*Davis*: No, ain't nothing to hide.

*The prosecutor*: Okay. Were you trying to lie about anything?

*Davis*: No.

*The prosecutor*: Okay. But you indicated the second time that you were asked to testify, you did tell everything that happened.

*Davis*: Everything. [Emphasis added.]

The United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to due process of law. US Const, Am XIV; Const 1963, art 1, § 17. "Implicit in this guarantee is that each criminal defendant enjoys the right to a fair trial[.]" *People v Horton*, 341 Mich App 397, 401; 989 NW2d 885 (2022). An "important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence[.]" *People v Hana*, 447 Mich 325, 350; 524 NW2d 682 (1994), amended 447 Mich 1203 (1994) (quotation marks and citation omitted).

Defendant argues that Davis "gave an emotional diatribe" during "an improper monologue" in which she "had a one-sided argument with" defendant by stating that "you" should have stayed away and "you" had no right to come back. However, the challenged testimony occurred in the context of Davis responding to the prosecutor's inquiry about why initially she was reluctant to testify at defendant's preliminary examination. This inquiry was relevant to the issue of Davis's credibility, given that the defense had suggested to the jury that Davis's reluctance to testify at the preliminary examination was because she was being untruthful. Moreover, Davis's brief remarks did not involve a lengthy verbal attack on defendant and did not rise to the level of an "emotional diatribe."

Defendant argues that he was deprived of his constitutional right to remain silent because Davis essentially challenged defendant to defend himself. Defendant, however, does not support this assertion with meaningful argument and citation to relevant authority. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his

claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Defendant also contends that defense counsel was ineffective for failing to object to Davis's testimony. Again, failure to advance a meritless position or a futile objection does not constitute ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201. In addition, defendant has failed to overcome the strong presumption that defense counsel's decision not to object was objectively sound trial strategy. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). Counsel reasonably could have viewed Davis's testimony as a proper response to the prosecutor's permissible question asking Davis about her earlier reluctance to testify, or defense counsel could have chosen to refrain from objecting to avoid placing undue emphasis on the remarks. See *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995) ("there are times when it is better not to object and draw attention to an improper comment"). We conclude that there is no reasonable probability that counsel's failure to object affected the outcome of defendant's trial. See *White*, 331 Mich App at 149.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Sima G. Patel

-8-