*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PIERRE MATTHEWS, Minor.

|  |  |
|---|---|
| PEOPLE OF THE STATE OF MICHIGAN, | UNPUBLISHED |
|  | April 21, 2025 |
| Petitioner-Appellee, | 1:29 PM |
|  |  |
| v | No. 369441 |
|  | Kent Circuit Court |
| PIERRE MATTHEWS, | Family Division |
|  | LC Nos. 23-051027-DL; |
|  | 23-051028-DL; |
|  | 23-051052-DL; |
|  | 23-051317-DL; |
|  | 23-051633-DL |
| Respondent-Appellant. |  |

Before: N. P. HOOD, P.J., and BOONSTRA and FEENEY, JJ.

PER CURIAM.

Respondent appeals by right the Family Division[1] of the Kent Circuit Court's order waiving jurisdiction over respondent and transferring proceedings to the Criminal Division[2] of the Kent Circuit Court on five juvenile delinquency petitions. The prosecution charged respondent, then 16 years old, with the following offenses: illegal use of a financial-transaction device, MCL 750.157q; assaulting, battering, wounding, resisting, obstructing, opposing, or endangering a police officer, MCL 750.81d(1); two instances of illegal use or sale of a financial-transaction device, MCL 750.157q; breaking into a motor vehicle to steal or unlawfully remove property and damaging the vehicle in the process, MCL 750.356a(3); breaking into a motor vehicle to steal or unlawfully remove property from the vehicle worth less than $200, MCL 750.356a(2)(a); and engaging in a criminal enterprise, MCL 750.159i(1). These offenses related to robbery spree in

---

[1] We will refer to the Family Division of the Kent Circuit Court as "the family court."

[2] We will refer to the Criminal Division of the Kent Circuit Court as "the circuit court."

Grand Rapids, Michigan, during which respondent and others allegedly stole property from parked vehicles. Respondent waived the Phase I probable-cause hearing for all five petitions. At the Phase II hearing governed by MCL 712A.4(4) and MCR 3.950(D)(2), the family court found that the interests of the public and the juvenile would be served by waiving jurisdiction and transferring proceedings to the circuit court. We affirm.

## I. BACKGROUND

This case arises out of respondent's history of delinquency petitions and probation violations that began in 2021 when he was 13 years old. Between 2021 and 2022, respondent was the subject of seven delinquency petitions in the family court. The prosecution accused him of attempted unlawful driving away of an automobile; unarmed robbery; assault with intent to rob while unarmed; failing or refusing to obey a police officer; violating city curfew; larceny in a building; retail fraud; assaulting, resisting, or obstructing a police officer; receiving and concealing a stolen vehicle; and purchasing tobacco as a minor. The family court ordered respondent to a term of probation with a location tether, with his mother's house as the tether location. Respondent repeatedly violated the terms of his probation by leaving his mother's house without permission and associating with peers who were a negative influence. As a result of his violations, the family court ordered respondent to be detained three times.

The family court's other attempts at intervention failed. The family court offered respondent counseling, but the counseling did not work because of the counselor's lack of communication. Respondent's probation officer, Christopher Warner, then offered counseling and mentorship through the Realism Is Loyalty program, an intervention program for high-risk youth in Grand Rapids. Respondent failed to engage with that program and was discharged. Officer Warner later testified that this program had been his "last-reserve effort," and after respondent's discharge, there was little else he could offer.

Warner then considered putting respondent in placement, but an unexpected injury delayed that decision. In July 2022, while evading the police, respondent jumped from an overpass and fell 40 feet. He was severely injured. Respondent broke his hips and femur and required rehabilitation.

After respondent healed, he incurred new petitions. In April 2023, Officer Warner removed respondent's tether because respondent asked for "some freedom" and the opportunity to search for a job and prove his level of maturity. Shortly after, respondent allegedly engaged in a series of crimes that led to the five delinquency petitions that are the subject of this case. For each petition, the prosecutor moved the family court to waive its jurisdiction to the circuit court for respondent to be tried as an adult. Respondent then waived the Phase I probable-cause hearing for all five petitions, and the family court conducted one combined Phase II hearing.

At the Phase II hearing, the family court took testimony and analyzed the statutory traditional waiver factors. Officer Warner testified about respondent's adjudications after being placed on probation and his probation violations, which caused him to be "in and out of detention" four times between 2021 and 2023. He characterized respondent's overall performance on probation as "very up and down," acknowledging that there were times when respondent did well in school, tested negative for substances, and followed through. But there were also times when

respondent had "fallen off" and "incurred new charges, ran away from home, [and] hung around with the wrong crowd."

Detective Dustin Cook from the Kent County Sheriff's Office also testified at the Phase II hearing. He had investigated respondent's criminal enterprise charge, which Detective Cook described as a "month-long crime spree" involving respondent, at least four of his peers, and a stolen vehicle. According to Detective Cook, respondent and his peers targeted heavily-populated areas, such as gym parking lots, to steal other cars or break into cars and steal personal property such as purses, backpacks, cash, and credit cards. They then used the cash and credit cards that they stole to purchase prepaid credit cards and gift cards. Detective Cook reported that his office had 15 contacts with respondent since 2021 and that "it definitely continues to be a problem."

At the close of the hearing, the prosecutor argued that placement was the only option that was not tried but it would be a waste of resources because respondent's participation in probation was up and down, and he had four stays in detention already. Further, respondent continued to engage in a pattern of criminal activity, and at some point, the community needed to be protected. Respondent's counsel acknowledged respondent's prior record but pointed out that most of respondent's infractions were nonviolent and noted that respondent did well in school and in secure settings like detention.

The family court then reviewed the six factors required at that time under MCL 712A.4(4) for a waiver determination[3] and found that each of the factors favored waiver.

Respondent now appeals.

## II. STANDARDS OF REVIEW

We review a trial court's decision on a motion to waive jurisdiction for an abuse of discretion. *People v Fultz*, 453 Mich 937 (1996). A trial court abuses its discretion when it "chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012). We review for clear error a trial court's findings of fact. See MCR 2.613(C). See also MCR 3.902(A). A "finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bibi Guardianship*, 315 Mich App 323, 329; 890 NW2d 387 (2016) (quotation marks and citation omitted). We review de novo questions of constitutional law. *TM v MZ (On Remand)*, 326 Mich App 227, 236; 926 NW2d 900 (2018).

## III. LAW AND ANALYSIS

Respondent argues that the family court erred by waiving jurisdiction. We disagree. The family court adequately considered the statutory factors, and its ultimate conclusion was principled and reasoned.

---

[3] Effective October 1, 2024, the Legislature amended the waiver factors set forth in MCL 712A.4(4). See 2023 PA 291.

Generally, the family court has exclusive original jurisdiction over proceedings concerning any child under 18 years old who is accused of violating a law. See MCL 712A.2(a)(1) (providing jurisdiction over juveniles accused of crimes with limited exceptions). See also *People v Thenghkam*, 240 Mich App 29, 36; 610 NW2d 571 (2000), abrogated in part on other grounds by *People v Petty*, 469 Mich 108, 116-118; 665 NW2d 443 (2003). But the family court may waive its jurisdiction over a child who is at least 14 years old, on motion of the prosecutor, if the alleged offense would be a felony if committed by an adult. See MCL 712A.4(1). See also *Thenghkam*, 240 Mich App at 37. Known as traditional waiver, this transfers a case from the juvenile division to the criminal division of the circuit court.

To determine whether to waive its jurisdiction, the family court conducts a hearing in two phases. *People v Williams*, 245 Mich App 427, 432; 628 NW2d 80 (2001), citing MCL 712A.4(3) and (4). See also MCR 3.950(D). In the first phase, the family court determines whether there is probable cause that the juvenile committed the offense. See *Williams*, 245 Mich App at 432. In the second phase, the family court determines "whether the best interests of the juvenile and the best interests of the public require a trial in the court of general jurisdiction rather than in the" family court. *Williams*, 245 Mich App at 432, citing MCL 712A.4(4). See also MCR 3.950(D)(2).

At the time of respondent's Phase II hearing in this case, "the Legislature ha[d] prescribed six criteria the family court must consider when making this best interests determination . . . ." *Williams*, 245 Mich App at 432, citing MCL 712A.4(4)(a) to (f). See also MCR 3.950(D)(2)(d)(*i*)-(*vi*). Specifically, MCL 712A.4(4)[4] then required the family court to consider the following six factors before waiving jurisdiction over a juvenile:

> (a) The seriousness of the alleged offense in terms of community protection, including, but not limited to, the existence of any aggravating factors recognized by the sentencing guidelines, the use of a firearm or other dangerous weapon, and the impact on any victim.

> (b) The culpability of the juvenile in committing the alleged offense, including, but not limited to, the level of the juvenile's participation in planning and carrying out the offense and the existence of any aggravating or mitigating factors recognized by the sentencing guidelines.

> (c) The juvenile's prior record of delinquency including, but not limited to, any record of detention, any police record, any school record, or any other evidence indicating prior delinquent behavior.

> (d) The juvenile's programming history, including, but not limited to, the juvenile's past willingness to participate meaningfully in available programming.

---

[4] Again, effective October 1, 2024, the Legislature amended the waiver factors set forth in MCL 712A.4(4). See 2023 PA 291.

(e) The adequacy of the punishment or programming available in the juvenile justice system.

(f) The dispositional options available for the juvenile.  [MCL 712A.4(4).]

The family court must give "greater weight to the seriousness of the alleged offense and the juvenile's prior record of delinquency than to the other criteria[.]"  MCL 712A.4(4).  The petitioner bears the burden of establishing by a preponderance of the evidence that waiver would serve the best interests of the juvenile and the public.  See MCR 3.950(D)(2)(c).  We consider the analysis of each factor in turn.

## A. THE SERIOUSNESS OF THE CRIMES

The statute first requires the family court to consider "[t]he seriousness of the alleged offense in terms of community protection, including, but not limited to, the existence of any aggravating factors recognized by the sentencing guidelines, the use of a firearm or other dangerous weapon, and the impact on any victim."  MCL 712A.4(4)(a).  Here, the family court extensively examined the potential impact on respondent's alleged victims:

Break ins, stealing credit cards, using those credit cards to perpetuate the crime spree.  Resisting, obstructing, and assaulting police officers.  Coordinating the crime spree for over a month's time.  Obstructing, resisting, assaulting police officer.

* * *

Taking separately the breaking and entering and resisting a police officer.  Using a credit card.  Separately, not serious.  And aggravating in and of itself.  Put together as a criminal crime spree over a month's period of time, these are serious.

You are fleeing police.  You're using a stolen vehicle to cart yourself around.  You're seen in the stolen vehicle.  You're seen coming out of the stolen vehicle.  You're seen stealing from vehicles.  You are going around this community.  A cursory review of the news by individuals in this community would tell them that we had an incredible crime spree.  A detailed understanding sitting in the circuit court juvenile division, the level of placements in detention where we have 98 beds and we've filled 98 beds, not with credit card folks, not with just sexual perpetrators, although there were a few, these were all people who were involved in car jackings, stealing, credit cards, breaking and entering, selling property, resisting and refusing, obstructing police over and over and over again.  It's the combination of those factors together that given your history places you at great risk because you are interacting with police and you're interacting with the public in a criminal way.  And that's what we've been dealing with for three years.  That—that seriousness of this offense is that history.

Repeatedly using . . . credit cards of other individuals.  Not only do they have to deal with their cars being broken into, fixing their cars, . . . the reporting to

-5-

the credit card company and cut the credit card, get a new credit card, then have to go through the investigation the credit cards are now doing. . . . This is all time that the public has to engage in. And then not feeling safe. That's the point that I raise that is a crime spree that was going on during the summer, not just your group, other groups as well and the community did not feel safe. Maybe I don't go to Planet Fitness anymore because it's being stolen; people are breaking in. Maybe I don't go to the Y. . . . I'm not going to go to that Meijer anymore. . . . They lose customers. That's what we are supposed to look at, what's the impact on the community and the seriousness of that. Do they lose customers for a short period of time? Has there been evidence presented on that? I'm looking at the juvenile division here as a whole. What has been happening? I can make a reasonable inference that these incidents at Y.W.C.A., Planet Fitness, and we didn't list all of them, other locations where people are gathering in large quantities, their cars are there. They're afraid. And that impacts the business. That impacts the community.

Nevertheless, respondent argues that the family court abused its discretion by determining that this factor supported waiver because respondent's alleged crimes were property crimes that did not involve respondent's use of a weapon. However, the family court acknowledged this potential argument and found that it was not persuasive:

It is true there are not aggravating circumstances such as a weapon involved in your crime, a firearm involved in your crimes. There's no evidence that you were using a firearm. No evidence that you were threatening an individual of the community as an aggravating offense. But taken as a whole, as I've described the crime spree, and the impact on the victims and the community at large, this factor, which I have to weigh heavier than others, supports waiver.

Additionally, although family courts are required to consider the statutory factors, family courts retain the discretion to consider other facts to make the ultimate determination whether to waive jurisdiction over a juvenile. See *Williams*, 245 Mich App at 432. In the present case, the family court discussed the risks that respondent faced by associating with other individuals who did have weapons:

Police have a right to defend themselves. And we've discussed this before. You don't know whether or not one of your friends has a gun and decides to use that gun and pulls the gun. A police officer has a right to respond. And if shots are fired, you don't know if you're going to be in the way. That didn't happen here but Detective Cook tells us that firearms were found in the vehicle that had been the vehicle you'd been in on multiple times and perpetrating the crime spree. But firearms were found at that time when—in May of 2023, when it was taken over by police. You were not involved in that chase. I'm not considering that factor other than this. . . .

Moreover, the fact that no one was physically injured during respondent's alleged property crimes does not preclude a finding that the offenses were serious enough to support waiver. See *People*

*v Fowler*, 193 Mich App 358, 365; 483 NW2d 626 (1992). Therefore, the family court did not err when it considered the specific facts of respondent's case and determined that MCL 712A.4(4)(a) weighed in favor of waiver.

## B. RESPONDENT'S CULPABILITY

MCL 712A.4(4)(b) requires the family court to consider "the culpability of the juvenile in committing the alleged offense, including, but not limited to, the level of the juvenile's participation in planning and carrying out the offense and the existence of any aggravating or mitigating factors recognized by the sentencing guidelines." Here, the family court found that factor (b) supported waiver, noting how respondent's "distinctive clothing" showed that he was "predominantly involved" in carrying out many of the criminal activities. In other words, there was high-confidence evidence of respondent's involvement. The family court also considered respondent's history of violating his probation with new criminal conduct as evidence of his culpability:

> You were involved in many, but not all of the crimes. Detective Cook pointed out how he spent three weeks of his time tracking video, history of the credit card, history of the prepaid cards that were purchased by using stolen credit cards, products that were purchased, and then tracking other stolen vehicles that were stole while using the white car—the white Lincoln. And you were predominantly involved in many of these criminal activities as shown by the distinctive clothing that you were wearing. You're not just a follower, you're a leader and I've talked to you about being a leader. You know the difference between what's right and wrong and you've chosen wrong.

> If we were here and Detective Cook said we only saw him one time, I'm not quite sure we'd be asking for a waiver. Again, an isolated, singular event. This is a criminal spree. That's the seriousness of this. And you're culpable because you continued to be involved. Why isn't culpability at a level that I'm concerned about? Because you have been in probation for three years. And before that time, three separate periods multi-months stays in juvenile detention. And every program that we have to utilize in probation, other than a placement, was utilized and you never were discharged from probation because you would come back and repeat a crime.

> So looking at the crimes as a whole, your culpability is clear and, therefore, factor (b) supports waiver.

Respondent correctly observes that there was no specific testimony at the Phase II hearing regarding whether respondent was involved in planning the alleged crimes. But the family court could reasonably infer from the evidence of respondent's participation in nearly all aspects of the crime spree that he was involved in at least some planning. Cf. *People of Kissner*, 292 Mich App 526, 534; 808 NW2d 522 (2011) ("[C]ircumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense."). Accordingly,

the family court did not abuse its discretion when it determined that MCL 712A.4(4)(b) supported waiver.

## C. RESPONDENT'S PRIOR RECORD OF DELINQUENCY

MCL 712A.4(4)(c) requires that the family court consider "any record of detention, any police record, any school record, or any other evidence indicating prior delinquent behavior." Here, the family court summarized respondent's record by stating, "[t]hree years of probation, four detention stays." Before the five petitions that are the subject of this appeal, respondent had adjudications for unarmed robbery, receiving and concealing a motor vehicle, stolen property, resisting obstructing a police officer, refusing to obey a police officer's commands, larceny in a building, and repeated probation violations. The family court acknowledged that respondent's school record was good, acknowledging Officer Warner's testimony that respondent "[does] well academically," and that respondent's coach saw "great potential" in him. But the family court also emphasized that respondent continued to return to his negative peers:

> So while there is evidence of people who believe in you, that you have a strong academic record, that you can be a leader, you have not been able to avoid negative peers and this is your greatest weakness. Therefore, those positive attributes that we've discussed do not overcome your prior juvenile record, your detention history. Therefore, factor (c) also supports waiver.

We conclude that the family court properly considered this factor. Its finding regarding respondent's prior record of juvenile delinquency does not fall "outside the range of principled outcomes" and, accordingly, is not an abuse of discretion. *Buie*, 491 Mich at 320.

## D. RESPONDENT'S PROGRAMMING HISTORY

The family court also found that respondent's programming history weighed in favor of waiver. MCL 712A.4(4)(d) requires the family court to consider the juvenile's programming history, including "the juvenile's past willingness to participate meaningfully in available programming." MCL 712A.4(4)(d). Officer Warner testified that, as a result of respondent's probation violations, respondent was offered court-contracted counseling but the counseling did not proceed because of the counselor's lack of communication. When that failed, Officer Warner referred respondent to the Realism Is Loyalty program, which Officer Warner stated respondent participated in before being discharged for not engaging enough. This testimony supports the family court's findings that respondent did not like working with his mentor in the program and did not want to be held accountable. The family court noted that, although respondent enjoyed working with his counselor in the program "for a period of time, you started to fall off." The family court further stated: "And what happened? More charges. So you did not fully benefit from any of the programs that we've offered and, therefore, factor (d) supports waiver." The family court adequately considered this factor and did not abuse its discretion by finding that this factor supported waiver. See *Buie*, 491 Mich at 320.

## E. THE ADEQUACY OF THE PUNISHMENT OR PROGRAMMING AVAILABLE IN THE JUVENILE JUSTICE SYSTEM AND DISPOSITIONAL OPTIONS AVAILABLE FOR THE JUVENILE

Respondent also argues that the family court abused its discretion by finding that factors (e) (adequacy of punishment or programming available in the juvenile system) and (f) (dispositional options available) supported waiver. He argues that the family court had not tried placement, and Officer Warner testified that he believed that respondent could succeed in placement if he applied himself. Additionally, respondent points to the fact that he did well in detention; during his most recent five-month detention stay, respondent achieved a Level 3 or "high" status. Although these factors—more than the others—are open to dispute, we conclude that the family court adequately considered them and did not abuse its discretion by concluding that they weighed in favor of waiver to the criminal division.

First, the record supports that the family court considered the adequacy of juvenile punishment or programming, including placement, which it had not yet tried. But the family court found placement unsuitable. It found that, if it put respondent in placement, then afterward, respondent would just return to his home, which Detective Cook confirmed had been a target of multiple investigations in the past three years for criminal activity. The family court also discussed the adequacy of detention:

> We can place you in detention. We've placed you there three times. We've placed you there a fourth time after this. We've had you there for a number of months and you were facing this hearing on waiver, whether we waived you to the criminal adult court and you test positive for marijuana. The reasonable inference I draw from that is that someone brought the marijuana to you because you're on tether, which tells me that you are still leaning on your negative peers. Even if you're just home with your mom, someone brought that to you. You wanted to bring it to you. So what options do I have here? Put you in detention again?

These findings are supported by Officer Warner's testimony that respondent had trouble staying away from negative peers and that "a good majority" of respondent's involvement with the judicial system was a result of the influence of inappropriate peers.

Ultimately, the family court weighed the possibilities of placement in one of the available six-month programs or a placement in detention against the seriousness of respondent's alleged crimes, as well as his prior record and made the following findings:

> [W]hen I look at the collective whole of this criminal spree and your prior history as a juvenile in the juvenile justice system and that—this last spree is with a group of people who you were told repeatedly to stay away from and you kept returning to them, that when I release you from detention, maybe some of these people will be in prison, I don't know. But will there be others that you're just going to go to? Because, that has been your history in your three years of probation.
>
> So even if I consider our last option, which is placement, it does not overcome the greater weight I'm giving to the seriousness of the alleged offense

being the collective criminal spree and your prior record of delinquency, which Mr. Warner pointe[d] out is inconsistent. It's up and down. And repeated inconsistency doesn't give me a reasonable belief that you will be able to overcome your desire to hang out with other criminals, even after placement given the three-year period of probation that you've had under this Court['s] oversite.

Officer Warner's testimony that respondent could be successful in placement if he applied himself—which Officer Warner confirmed only happened sporadically—is insufficient to create "a definite and firm conviction that a mistake has been made" regarding the family court's findings on these final two factors. *In re Bibi Guardianship*, 315 Mich App at 329.

Therefore, the family court fulfilled its mandate to consider all six specified criteria, and none of its findings were clearly erroneous. See *id*. See also MCL 712A.4(4); MCR 3.950(D)(2)(d).

## F. SUITABILITY OF THE PROGRAMS AND FACILITIES AVAILABLE IN THE ADULT CORRECTIONAL SYSTEM

Finally, respondent argues that the family court erred by failing to consider evidence on the record regarding the suitability of the programs and facilities available in the adult correctional system, as required under *People v Dunbar*, 423 Mich 380, 388; 377 NW2d 262 (1985). We disagree. We acknowledge that the family court did not explicitly address this factor. Considering the family court's detailed analysis of the inadequacy of juvenile punishments and programming, it implicitly concluded that the adult correction system was the only reasonable option left. This was not an abuse of discretion.

The statute in effect at the time of *Dunbar* explicitly required family courts to consider " '[t]he relative suitability of programs and facilities available to the juvenile and criminal courts for the child.' " *Id*. at 386, quoting a prior version of MCL 712A.4(4)(d). But the Court also separately established this requirement in articulating its standard for waiver decisions. See *Dunbar*, 423 Mich at 386-388.

Here, the family court referred to the suitability of the programs and facilities available in the *adult* correctional system only implicitly, as part of its discussion of the *inadequacy* of the *juvenile* programs and disposition options. However, a family court does not violate due process by waiving jurisdiction without making specific findings on the record regarding all the Phase II statutory criteria. *Spytma v Howes*, 313 F3d 363, 369-370 (CA 6, 2002).[5] Further, regarding the former MCL 712A.18(1)(n) (now MCL 712A.18(1)(o))—which required the family court to consider criteria that are nearly identical with those under MCL 712A.4(4) when deciding whether to impose an adult sentence or juvenile disposition in a designated case—the Michigan Supreme Court rejected the requirement for "a mechanical recitation of the statutory criteria." *Petty*, 469 Mich at 113-116. Instead, the family court simply must "acknowledge its discretion" to choose between the available sentencing and dispositional options and "consider the enunciated

---

[5] Although not binding on state courts, lower federal court decisions may be considered for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

factors . . . to assist it in choosing one option over the others." *Id*. at 117. Here, the family court thoroughly addressed the statutory factors—addressing at length the inadequacy of the options in the juvenile system—and acknowledged its discretion to use those factors to assist in choosing to waive its jurisdiction to the criminal court system. Therefore, although the family court did not explicitly consider available adult programming, the family court did not clearly err or abuse its discretion.

## IV. CONCLUSION

Respondent has not established that the family court erred when it waived its jurisdiction over respondent. We affirm.

/s/ Noah P. Hood
/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney

-11-